Anthony M. Solis, SBN 198580
A Professional Law Corporation
1055 West 7th Street, Suite 2140
Los Angeles, CA 90017
213-489-5880 - Phone
213-489-5923 - Fax
anth500@earthlink.net

Judy Clarke, SBN 76071
Clarke & Rice, APC
2366 Front Street
San Diego, CA 92101-1414
619-308-8484 - Phone
619-243-7386 - Fax
judyclarke@jcsrlaw.net

Attorneys for Defendant
LEONIDAS IRAHETA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. CR-07-1172(B)-DDP-26 |
| ) | |
| Plaintiff, ) | NOTICE OF MOTION AND MOTION |
| ) | FOR DISCLOSURE OF PROFFER |
| ) | INFORMATION; MEMORANDUM OF |
| v. ) | POINTS AND AUTHORITIES |
| ) | |
| ) | **TRIAL DATE SET: FEB. 2, 2010** |
| ) | |
| LEONIDAS IRAHETA, ) | DATE:       DEC. 14, 2009 |
| ) | TIME:       3:00 p.m. |
| Defendants. ) | PLACE:     Courtroom 3 |

TO THE PLAINTIFF, UNITED STATES OF AMERICA: GEORGE S. CARDONA,

ACTING UNITED STATES ATTORNEY, BRIAN R. MICHAEL, KEVIN M. LALLY, and

NILI T. MOGHADDAM, ASSISTANT UNITED STATES ATTORNEYS.

PLEASE TAKE NOTICE THAT: on December 14, 2009 at 3:00 p.m. in the courtroom

of the Hon. Dean D. Pregerson, Defendant LEONIDAS IRAHETA, by and through his counsel

of record, ANTHONY M. SOLIS and JUDY CLARKE, hereby move, pursuant to Rules 12 and

16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland, Giglio v. United States*, and

the Fifth, Sixth and Eighth Amendments to the United States Constitution, for an order directing

**NOTICE OF MOTION AND MOTION FOR PROFFER INFORMATION, ETC**.

1

1   the Plaintiff to disclose Proffer Information as herein described.

2       The proffer information concerning informants and cooperators sought by the defendant

3   is as follows, and includes but is not limited to notes or other memoranda of, and correspondence

4   regarding:

5       (1) the content and date(s) of all discussions between the Assistant United States

6   Attorneys and counsel for the informant(s) and/or cooperator(s) regarding the information

7   counsel proffered the individual would provide;

8       (2) the content and date(s) of all discussions between the Assistant United States

9   Attorneys and counsel for the informant(s) and/or cooperator(s) regarding the benefits to be

10  offered;

11      (3) the content and date(s) of all actual proffer(s) by the informant(s) and/or cooperator(s)

12  as well as statements by his or her counsel regarding the information that was provided;

13      (4) the content and date(s) of all discussions between the Assistant United States

14  Attorneys and the case agents regarding their opinion(s) as to the completeness and truthfulness

15  of the proffer information;

16      (5) the content and date(s) of all discussions between the Assistant United States

17  Attorney and counsel for the informant(s) and/or cooperator(s) counsel regarding additional

18  information the Government believed the informant(s) and/or cooperator(s) should provide,

19  including whether an assessment had been made that the initial proffer was either incomplete or

20  misleading; and

21      (6) the content and date(s) of all discussions regarding the extent of benefits to be offered

22  to the informant(s) and/or cooperators or anticipated to be offered, as well as the actual benefits

23  ultimately offered.

24      This motion is based upon this notice of motion and motion, the attached memorandum

25  of points and authorities, the attached Declaration of Anthony M. Solis, the records and files in

26  this case, and upon any such further oral or documentary evidence as may be presented

27  subsequent to this motion, including any such oral or documentary evidence as may be presented

28  at any hearing on this motion.

**NOTICE OF MOTION AND MOTION FOR PROFFER INFORMATION, ETC**.

1 | DATED: November 16, 2009

ANTHONY M. SOLIS,
A Professional Law Corporation

JUDY CLARKE
Clarke & Rice, APC

By:

***ANTHONY M. SOLIS***

_____
ANTHONY M. SOLIS
Attorneys for Defendant
LEONIDAS IRAHETA

**NOTICE OF MOTION AND MOTION FOR PROFFER INFORMATION, ETC**.

1

# TABLE OF CONTENTS

2

3     I     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

5     II.    THE PROFFER SYSTEM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6

7     III.   ANY VARIANCE IN A STATEMENT OF EITHER AN INFORMANT OR A
             COOPERATING WITNESS IS *BRADY* MATERIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8

9     IV.    THE CONTENT OF NEGOTIATIONS REGARDING THE AMOUNT OF A

10           DOWNWARD DEPARTURE TO BE RECOMMENDED BY THE
             GOVERNMENT PURSUANT TO 5K1.1 IS *BRADY* MATERIAL . . . . . . . . . . . . . . . . 6

11

12    V.     *BRADY* MATERIAL NEED NOT BE REDUCED TO WRITING TO BE

13           DISCOVERABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

14

15    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**FEDERAL CASES**

3
*Brady v. Maryland*, 373 U.S. 83, (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 10, 11

4
*Carriger v. Stewart*, F.3d 463 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5
*Giglio v. United States* 405 U.S. 150 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10

6
*Giles v. Maryland*, 386 U.S. 66 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7
*Kyles v. Whitley,* 514 U.S. 419 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

8
*Napue v. Illinois,* 360 U.S. 264 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9
*Singh v. Prunty* 142 F.3d 1157 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10
*United States v. Bagley*, 473 U.S. 667 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11
*United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

12
*United States v. Brumel-Alvarez*, 991 F.2d 1452 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 9

13
*United States v. Croft*, 124 F.2d 1109 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

14
*United States v. Heller,* 830 F.2d 150 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15
*United States v. McVeigh*, 954 F. Supp. 1454 (D. Colo. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 7

16
*United States v. Nickerson*, 669 F.2d 1016 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17
*United States v. Pellulo,* 14 F.3d 881 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18
*United States v. Service Deli*, 151 F.2d 938 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19
*United States v. Stevens,* 08-231 (D.D.C.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

20
*United States v. Udechukwu*, 11 F.3d 1101 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21
*United States v. Williams*, 954 F.2d 668 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

22
*United States v. Wood*, 57 F.3d 733 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

23

24

**FEDERAL STATUTES**

25
18 U.S.C. § 1001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

26
18 U.S.C. § 3500 (Jencks Act) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

27
21 U.S.C. § 846, 841 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28
21 U.S.C. § 851 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**NOTICE OF MOTION AND MOTION FOR PROFFER INFORMATION, ETC**.

**OTHER AUTHORITIES:**

U.S. Sentencing Guidelines § 5C1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

U.S. Sentencing Guidelines § 5K1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

U.S. Sentencing Guidelines § 3C1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Leonidas Iraheta is charged, along with several other defendants, in a multi count Indictment with participation in a racketeer-influenced corrupt organization (RICO)/Violent Crime in Aid of Racketeering (VICAR), one of the predicate acts of which is a murder.  One of the VICAR counts (count 21) specifically charges Mr. Iraheta with the murder of "J.B." on July 21, 2001.  It was not until the Second Superseding indictment (the 3d indictment) in this case that Mr. Iraheta was included as a defendant and the July 2001 murder alleged.[1]  No decision has been made whether or not to seek the death penalty in this case; however, the government has advised that it believes Mr. Iraheta faces a potential sentence of death.

Based on conversations with government counsel, and other information and documentation, including, but not limited to, the voluminous discovery thus far provided, the defense has been informed and believes that there are at least two informant(s) and/or cooperator(s) who accuse Mr. Iraheta of involvement in the murder.[2]  Counsel is aware of the identify of one of the cooperators, but is not yet firmly aware of the name of the second such individual.  Counsel is informed, and believes that the known individual has provided information to the government in hopes of receiving (1) relief from a mandatory minimum sentence to which he might otherwise be subjected (in this case and a separately indicted case); (2) a recommendation of a reduced or mitigated sentence; (3) some other valuable, material benefit from the government, including monetary remuneration; and/or (4) some combination of each of the foregoing or other incentives.

If the government plans to use this informant/cooperator witness and others, at trial

---

[1]Two other defendants are also accused with this July 2001 murder, Leo Iraheta's twin brother, Vladimir Iraheta, and an unrelated defendant Eduardo Hernandez.  None of the three defendants, now accused of this murder, were charged in earlier versions of the indictment.

[2]At least one of these individuals, and possibly both, was indicted in an earlier version of this indictment, and it appears has "cut a deal" to testify against Mr. Iraheta and his two co-defendants, and possibly others.

**NOTICE OF MOTION AND MOTION FOR PROFFER INFORMATION, ETC**.

1

1   against Mr. Iraheta or his co-defendant/alleged co-conspirators, *as it has explicitly*

2   *communicated it does*, the defense is entitled to proffer information as herein described.

## II.

## THE PROFFER SYSTEM

5   The proffer system is a broad descriptive term used to describe the manner in which

6   represented (and unrepresented persons) become government informants and/or cooperating

7   witnesses. (*See,* U.S.S. G. § 5C1.1, 5K1.1).

8   Generally, the manner in which a represented person enters into a proffer agreement is as

9   follows: the represented individual's[3] attorney contacts or is contacted by the Assistant United

10  States Attorney handling a particular case to determine whether the individual desires to provide

11  information and/or testimony to the government.

12  The Assistant U.S. Attorney (AUSA) typically will want some offer of proof, *i.e.*, what

13  information the cooperator will deliver, expecting at all times that it will be truthful.  The

14  cooperator, for his or her part, will want to ascertain the type and extent of the benefits the

15  government is prepared to offer in exchange.

16  The cooperator's attorney will then make a "proffer" of the information the cooperator

17  can provide.  Following an initial assessment by the AUSA and the case agent as to whether the

18  proffered information is desirable to obtain and secure, they will meet with the cooperator face to

19  face, typically in the presence of the cooperator's attorney.  During this "proffer" session, the

20  cooperator is encouraged to provide as much information as possible, including potentially self-

21  incriminating information as well as information that will tend to incriminate others.  These

22  discussions are typically protected by written agreements or memoranda of understanding that

23  confer varying levels of immunity from prosecution for statements made during the discussions

24  or negotiations for the desired information.

25  The information provided by the cooperator will then be evaluated by the AUSA and

26  case agent to determine whether it comports with the information they have reason to believe the

27  _____

28       [3]Whether an informant or cooperating defendant, this individual shall hereinafter
generally be referred to as "cooperator."

**NOTICE OF MOTION AND MOTION FOR PROFFER INFORMATION, ETC**.

1   cooperator should have and, if so, whether it is complete or incomplete, and whether it can be

2   reconciled with information the case agent(s) and AUSA have gathered throughout their

3   investigation and prosecution.  If the information does not comport with their expectations, the

4   AUSA and case agent will assess the nature and extent of the inconsistency or inconsistencies,

5   and the overall credibility and litigation value of the prospective cooperator as an informant or

6   witness.

7         Often the AUSA and case agents are skeptical and critical of the first proffer.  To be sure,

8   information from cooperators is suspect *ab initio* because often the AUSA has filed charges

9   against the cooperator and exposed the cooperator to a lengthy prison sentence, including

10  mandatory minimum sentences, the only relief from which, often times, is, of course, to become

11  a cooperator.  In addition, cooperators, for a variety of reasons, will offer an ever expanding

12  amount of information, including a version of events that changes over time, depending upon

13  whether or not the case agent(s) believe the information being provided, and depending upon the

14  pressure of the pending prosecution on the cooperator.  In many instances, when unsatisfied with

15  the proffered information, the AUSA will inform counsel that  the proffer is insufficient because

16  it is believed to be either untruthful or incomplete.  The AUSA will typically respond by

17  informing counsel that the government believes that the cooperator has withheld or

18  misrepresented information and will further proffer their own belief as to the manner and extent

19  to which the cooperator's proffer was insufficient.

20        Often, as a result of these communications, the cooperator will then meet with the

21  government for a second proffer session in order to allay concerns.  The cooperator will then

22  supplement or correct the information supplied in the initial session.  Perceived inconsistencies

23  may be reconciled or "corrected," and alleged "untruthful information" will give way to a "more

24  complete" account.  Such a session is critical to the cooperator because, without the agreement

25  of the government to tender or recommend the sought after benefits, the hope of obtaining the

26  reduced sentence or other benefit will evaporate.  Finally, the extent to which the court agrees to

27  confer any benefits recommended by the government, will often depend on the quality and

28  strength of the AUSA's recommendation to confer that benefit which, in turn, depends on the

1  government obtaining the benefits it received from the cooperator.[4]

2      All of the information sought herein is *Brady* material because it impacts the cooperator's

3  ultimate credibility, and should be ordered disclosed to the defense.  A trial jury should be

4  allowed to evaluate the credibility of a cooperating witness including the process of the

5  evolution of the story of the witness.  The proffer system *may be* a part of our system of justice,

6  but it must not be a system that encourages perjury.  At times, a cooperator is told by his or her

7  counsel what the government expects to hear from the cooperator during the proffer session; at

8  times a cooperator changes and/or expands his or her story between the proffer by counsel and

9  the actual proffer session.

10      The evolutionary process of pinning down a cooperator's information and ultimate

11  testimony, and the changing versions of cooperators,  are critical to an evaluation of the

12  credibility of the witness and should be exposed to the trier of fact.  A jury may determine that

13  the cooperator tailored or adapted his story to contain the information he or she was told the

14  government needed for its case or expected to hear.  The jury may determine that the cooperator

15  changed his or her story to try to curry favor with the government and gain more cooperation

16  "points."  In essence, the jury might determine that the cooperator lied in order to get out from

17  under a mandatory minimum, get a shorter sentence or obtain any other benefit; indeed, the jury

18  might determine that the cooperator lied because the truth would not have set him free.

19      Too often testimony is shaped, influenced and formed by this proffer process well before

20  the first actual meeting between the cooperator and the government.  Typically, the targeted

21  defendants then only receive the finished product of the debriefing which omits the process

22  though which that finished product is made.  Like politics and sausages, a cooperator's testimony

23  is often the result of an ugly process.  A jury might conclude that the process–the system of

24  incentives and inducements, and even harsher disincentives and punishments–corrupts the final

25  product, the testimony of the cooperator.

26

27      [4]An evaluation by an AUSA that a cooperator has provided false information can lead to

28  a separate prosecution under 18 U.S.C. §1001 (false statements) or a sentencing enhancement for
obstruction of justice under U.S. Sentencing Guidelines §3C1.1.

**NOTICE OF MOTION AND MOTION FOR PROFFER INFORMATION, ETC**.

1   In addition, the cooperator is almost always given a plea agreement which reveals that

2   the government is committed to no specific recommendation of a downward departure based

3   upon cooperation.  The government often commits only to "bring the nature and extent of the

4   defendant's cooperation to the attention of the Court" and whether the cooperator has been

5   truthful or helpful is an evaluation that the government reserves for its "sole and exclusive

6   discretion."  Oftentimes, however, the cooperator has developed an expectation based upon a

7   potential range of downward departures that the government has suggested that it may be willing

8   to recommend.  If the cooperator's counsel and the AUSA discussed or inferred a possible range

9   of downward departure – or even merely relief from a mandatory minimum prison sentence[5] –

10  such information would be relevant and critical to the defense for at least two reasons:

11  (1) First, it would be relevant because discussions about the existence of a "range"

12  indicates that the *amount* of downward departure, as opposed to the *fact* of a downward

13  departure, depends on the quality of the information provided.  It may be argued that our system

14  of justice should not allow this type of inducement to cooperators because of the intense

15  incentive to lie to obtain a valuable benefit.  This motion does not concern itself with that larger

16  issue.  It does, however insist that the trier of fact know about the process through which the

17  cooperator's testimony was procured.

18  (2) Second, if the discussion of a range of downward departure is not mentioned in the

19  plea agreements, but was shared by defense counsel with his client, then it may affect the

20  cooperator's state of mind. This, again, is a fact the jury should know.

21  It is for all these reasons the defendant seeks an order compelling the government to

22  provide the requested information.

### III.

### A VARIANCE IN A STATEMENT OF A COOPERATOR IS BRADY MATERIAL

25  *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963) provides that exculpatory material in the

---

27  [5]This is likely to have occurred in this case since the government filed an Information to
28  Establish Prior Conviction under 21 U.S.C. § 851 against the known cooperating individual in
this case.

1  government's possession, or to which the government has access and/or control, must be turned

2  over to defendants in a criminal case.  *Brady* material is any evidence material either to guilt or

3  punishment which is favorable to the accused, irrespective of the good faith or bad faith of the

4  prosecution.   It encompasses impeachment evidence as well.  *Giglio v. United States*, 405 U.S.

5  150, 154 (1972); *United States v. Bagley,* 473 U.S. 667, 676 (1985).   Prior statements of a

6  witness that are both material and inconsistent with his anticipated testimony fall within the

7  *Brady* rule.  *See Kyles v. Whitley,* 514 U.S. 419 (1995).   Indeed, discovery of the notes of two

8  AUSA's of a witness interview which conflicted with the testimony of the witness at trial

9  resulted in the *post conviction* dismissal of a recent high profile prosecution against a U.S.

10  Senator, upon motion of the Department of Justice.  *See United States v. Theodore Stevens*, No.

11  08-231 (Dkt. 324, April 1, 2009)(Exhibit A); *see also* April 28, 2009 letter from Judge Sullivan

12  to Judicial Conference Advisory Committee on Rules of Criminal Procedure (Dkt. 414, April 28,

13  2009)(noting *Brady* violations were revealed for the first time five months after the guilty verdict

14  was returned, and the need for a Rule change to eliminate the need for a prudent prosecutor

15  deciding to err on the side of transparency) (Exhibit B).

16      Shining the light of day on the proffer process and revealing the evolution of a

17  cooperator's statement(s) is critical to ensuring that presumably innocent defendants are not

18  erroneously convicted of crimes they did not commit.   Changes in a cooperator's proffer

19  through counsel and during the process of cooperation as well as pressures on cooperating

20  witnesses which include the government's expectations of what the "truth" are critical to surface

21  and exactly the kind of impeaching information envisioned by *Brady* and its progeny.

22                                              **IV.**

23  **THE CONTENT OF NEGOTIATIONS REGARDING THE AMOUNT OF A
    DOWNWARD DEPARTURE TO BE RECOMMENDED BY THE GOVERNMENT**

24  **PURSUANT TO U.S.S.G § 5K1.1 IS *BRADY* MATERIAL**

25      An individual's expectation at the time of a proffer is given is relevant to credibility.

26  Since it is the witness' state of mind regarding benefits to be received which may motivate him

27  or her to color or shade testimony, or even to perjure him/herself outright, in hopes of receiving

28  an enhanced benefit in the form of a government request for a reduced sentence, this information

---

**NOTICE OF MOTION AND MOTION FOR PROFFER INFORMATION, ETC**.

must be disclosed under *Brady*. The Courts have also granted wide latitude to defense lawyers in discovering all government-provided benefits to an informant.

The motive of any witness to testify is discoverable. *Giglio v. United States*, 405 U.S. 150 (1972). A witness' motive to testify in favor of one party and against another is admissible into evidence. F.R. Evid. 608. As urged by the Ninth Circuit:

> Because the government decides whether and when to use such witnesses, and what, if anything, to give them for their service, the government stands uniquely positioned to guard against perfidy. By its actions, the government can either contribute to or eliminate the problem. Accordingly, we expect prosecutors and investigators to take all reasonable measures to safeguard the system against treachery. This responsibility includes the duty as required by *Giglio* to turn over to the defense in discovery all material information casting a shadow on a government witness's credibility.

*United States v. Bernal-Obeso*, 989 F.2d 331, 333-34 (9th Cir. 1993).

Evidence that the government has threatened a potential witness to gain the witness' cooperation is admissible and may also demonstrate unconstitutional interference with the defendant's right to free access to witnesses. *United States v. Heller*, 830 F.2d 150, 154 (11th Cir. 1987). A witness could perceive a threat if the government expresses dissatisfaction with their proffer.

Accordingly, *Giglio* material is discoverable to allow defense counsel to establish possible bias or hostility on the part of an informant/cooperating witness. It is proper impeachment to question a cooperating witness about the dismissal of charges against him or other preferential treatment. *United States v. Nickerson*, 669 F.2d 1016, 1018 (5th Cir. 1982).

It is not just realized promises which must be disclosed. Unconsummated promises or rewards or benefits are considered *crucial* to the defense. *United States v. Williams,* 954 F.2d 668, 672 (11th Cir. 1992). This is because it is the witness' expectations, not the prosecutors' intentions, which will govern and color the witness' narrative. *United States v. McVeigh* , 954 F.Supp. 1454 (D. Colo 1997).

The Eleventh Circuit Pattern Criminal Jury Instructions, cited with approval by the Court in *United States v. Bernal-Obeso*, 989 F.2d 331, 334 (9th Cir. 1993), highlight the importance of such evidence in judging the credibility of an informant or witness. Instruction 1.1 states:

---

**NOTICE OF MOTION AND MOTION FOR PROFFER INFORMATION, ETC**.

1

2

**Accomplice-Informer Immunity**.  The testimony of some witnesses must be considered with more caution than the testimony of other witnesses.  For example, a paid informer, or witness who has been promised that he or she will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have a reason to make a false statement because he wants to strike a good bargain with the Government.  So, while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

3

4

5

In *United States v. Service Deli*, 151 F.2d 938 (9th Cir. 1998), the court held that

6

7

handwritten notes taken by an antitrust attorney during and interview with a former principal of

8

the contractor was *Brady* evidence; and the government's failure to disclose these notes required

9

reversal.

10

In *Service Deli*, the former principal (Ditzel) was interviewed on seven occasions, but the

11

first three did not result in the generation of a written statement.  In the first three interviews,

12

Ditzel denied any discussion of prices, but in the fourth, he finally admitted prices were

13

discussed and notes were taken by an antitrust division attorney at that December 6 interview.

14

The government did not turn over the notes of that interview, but instead produced a

15

typewritten summary, dated October 9, 1996.  In submitting the summary, the government

16

represented to the district court that the memorandum contained the substance of the December 6

17

interview.  Pursuant to an order of limited remand, the district court examined the notes and

18

found that there was nothing in the notes that was "material to the matter at hand that was not

19

discussed and disclosed in the memorandum."

20

The court of appeals reversed.  The appellate court reviewed the notes and compared

21

them to the summary produced by the government.  Contrary to the district court, it found that

22

there were discrepancies between the notes and the summary memorandum sufficient to require

23

disclosure of the original notes to the defendant.  The court then requested both parties to address

24

whether any discrepancies between the notes and the typewritten summary were prejudicial.  The

25

court found the failure to disclose was prejudicial.

26

In *United States v. Croft,* 124 F.3d 1109 at 1120-21 (9th Cir. 1997), the government's

27

cooperating witnesses testified pursuant to conditional plea/immunity agreements.  Those

28

agreements each contained clauses stating that the witness was to testify truthfully, that if the

1  witness breached the agreement, it became void and the government could proceed as if the

2  agreement never existed, and that the government retained the exclusive right to determine

3  whether the agreement had been breached.  Croft argued the agreements violated her Sixth

4  Amendment right of confrontation, because they forced the government's witnesses to testify to

5  the government's approved version of the "truth."

6         The district court ruled it would not enforce the clause granting the government the

7  exclusive right to determine whether the agreement had been breached insofar as that exclusive

8  right encompasses the right to determine whether the witness had told the truth.  The court of

9  appeals declared that the district court had properly condemned such a provision.

10         In *United States v. Brumel-Alvarez*, the government withheld a memorandum written by

11  a government witness which was highly critical of a government informant's integrity and role

12  during the course of an undercover drug investigation.  The Ninth Circuit held this violated the

13  defendants' right to due process under *Brady* and violated the Jencks Act.  As stated by the

14  Court:

15         We also reject the government's argument that the Levine Memorandum
       contained merely cumulative evidence.  In truth, it contained evidence
16       contradictory to the government's position.  The jury, not the prosecutor, has the
       duty to sift through the inconsistencies of testimony, to weigh the credibility of
17       witnesses and to resolve any ambiguities in the evidence.

18  *United States v. Brumel-Alvarez*, 991 F.2d 1463.  The Court went on to explain:

19         Wheeler's credibility as a witness was an important issue in the case.  Evidence
       that he lied during the investigation, that he had an undue influence on the DEA
20       and Customs agents involved in the investigation, or that he thwarted the
       opportunity to gather crucial evidence, would be relevant to his credibility and the
21       jury was entitled to know of it . . .Agent Robles might have been impeached with
       the memorandum as well.

22  *Id.*

23         Prosecutors and investigators must take all reasonable steps to safeguard the system of

24  use of informants against treachery, and that responsibility includes the duty as required by

25  *Giglio* to turn over to the defense in discovery ***all*** material information casting a shadow on a

26  government witness' credibility.  In *United States v. Bernal-Obeso,* 989 F.2d 331, 334-36 (9th

27  Cir. 1993), the court explained:

28         [W]e have decided on balance not to prohibit, as some have suggested, the

**NOTICE OF MOTION AND MOTION FOR PROFFER INFORMATION, ETC**.

9

practice of rewarding self-confessed criminals for their cooperation, or to outlaw the testimony in court of those who receive something in return for their testimony.  Instead, we have chosen to rely on (1) the integrity of government agents and prosecutors not to introduce untrustworthy evidence into the system; (2) trial judges and stringent discovery rules to subject the process to close scrutiny; (3) defense counsel to test such evidence with vigorous cross-examination; and (4) the wisdom of a properly instructed jury whose duty it is to assess each witness's credibility and not to convict unless persuaded beyond a reasonable doubt of the accused's guilt. . . Because we have made this choice, it is essential that relevant evidence bearing on the credibility of an informant-witness be timely revealed (1) to defense counsel as required by *Giglio,* and (2) to the ultimate trier of fact, unless clearly cumulative or attenuated.

*Id.* (citations omitted).

The prosecution's failure to disclose salient information unearthed during its investigation into a defendant's claim that she had been coerced by a drug trafficker into carrying heroin into the United States violated the Government's obligations under *Brady* and *Giglio.  United States v. Udechukwu,* 11 F.3d 1101. (1st Cir. 1993).

In *Carriger v. Stewart,* 132 F.3d 463 (9th Cir. 1997), (*en banc*), the Court granted a convicted murderer's petition for a writ of habeas corpus on the basis of a *Brady* violation relating to a confidential informant's testimony.  "The disclosure obligation exists, after all, not to police the good faith of prosecutors, but to ensure the accuracy and fairness of trials by requiring the adversarial testing of all available evidence bearing on guilt or innocence." *Id*., 132 3d. at 480, citing *Kyles v. Whitley,* 514 U.S. 419, 438-42 and *Brady, supra*, at 87.

In *Singh v. Prunty,* 142 F.3d 1157 (9th Cir. 1998), the Court, reversing the denial of a petition for a writ of habeas corpus filed by a defendant convicted of hiring a "hit man" to murder his wife and stepdaughter, held that non-disclosure of the state's agreement to provide benefits to a witness in exchange for his testimony violated due process.  These benefits related to favorable treatment the confidential informant received regarding his various criminal charges and prior convictions. *Id.* at 1161.

Hence, **_all_** information regarding potential and realized proffers must be disclosed to the defense in what ever form the information may exist.

///

///

1

## V.

### *BRADY* MATERIAL NEED NOT BE REDUCED TO WRITING TO BE DISCOVERABLE

It is undisputed that a memorandum detailing an interview with a witness, which sets forth facts inconsistent with the witness' testimony, qualifies as *Brady* evidence. *United States v. Pellulo,* 14 F.3d 881 (3ʳᵈ Cir. 1994). However, *Brady* itself places **no** limitation on the form of the evidence required to be disclosed; rather, it simply refers to "evidence favorable to an accused." *Brady v. Maryland,* 373 U.S. at 87.

The government must make a reasonable effort to aid the defense to obtain favorable evidence or witnesses. *Kyles v. Whitley,* 514 U.S. at 437 (prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police). Knowledge of exculpatory evidence is imputed to the prosecutor as the acting agent of the Government. *United States v. Wood,* 57 F.3d 733 (9ᵗʰ Cir. 1995). The inherent unreliability of the testimony of a government informant/cooperator underscores the need for complete disclosure of information relating to credibility.

Thus, while an unwritten statement might not fall within the Jencks Act (18 U.S.C. § 3500), no decision falling within the progeny of *Brady* has placed such a limitation upon the prosecution's duty to disclose. Indeed, judicial adoption of such a limitation on *Brady* would create a virtual license to the prosecution to fail to reduce such information to writing solely to avoid compliance with their constitutional obligation under *Brady*.

///
///
///
///
///
///
///
///

**NOTICE OF MOTION AND MOTION FOR PROFFER INFORMATION, ETC**.

1

**CONCLUSION**

2       For the reasons cited above, it is respectfully requested that the Court enter an order

3 compelling the government to disclose the requested information.  All such information should

4 be produced at the earliest possible period to assure proper preparation for trial.

5

6  DATED: November 16, 2009                    ANTHONY M. SOLIS,
                                              A Professional Law Corporation
7
                                              JUDY CLARKE
8                                             Clarke & Rice, APC

9                                             By:

10                                            ***ANTHONY M. SOLIS***

11                                            _____
                                              ANTHONY M. SOLIS
12                                            Attorneys for Defendant
                                              LEONIDAS IRAHETA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**NOTICE OF MOTION AND MOTION FOR PROFFER INFORMATION, ETC**.

1

## DECLARATION OF ANTHONY M. SOLIS

2       Anthony M. Solis declares as follows:

3       I am an attorney at law licensed to practice in this district.  I am one of the attorneys of

4  for Leonidas Iraheta in this matter.  The factual information and allegations set forth in the

5  attached Motion, including but not limited to the information regarding the informant(s) and/or

6  cooperator(s) in this case and the information regarding "proffers", is true and correct, based

7  upon information and belief and my own personal knowledge.

8       I declare under the penalty of perjury under the laws of the United States of America that

9  the foregoing is true and correct.

10      Executed this 18th day of November, 2009.

11

12                                          *ANTHONY M. SOLIS*
                                         _____
13                                          ANTHONY M. SOLIS

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR PROFFER INFORMATION, ETC**.