GEORGE S. CARDONA
Acting United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
KEVIN M. LALLY (Cal. State Bar No. 226402)
BRIAN R. MICHAEL (Cal. State Bar No. 240560)
NILI T. MOGHADDAM (Cal. State Bar No. 226636)
Assistant United States Attorneys
Violent & Organized Crime Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2170/0340/6520
    Facsimile: (213) 894-3713
    Email:   kevin.lally@usdoj.gov
             brian.michael@usdoj.gov
             nili.moghaddam@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 07-1172(B)-DDP |
|---|---|---|
| Plaintiff, | ) | GOVERNMENT'S OPPOSITION TO DEFENDANT LEONIDAS IRAHETA'S MOTION FOR DISCLOSURE OF PROFFER INFORMATION |
| v. | ) | |
| SERGIO PANTOJA, et al., | ) | Date:    February 22, 2010 |
| Defendants. | ) | Time:    3:00 p.m. |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Kevin M. Lally, Brian R. Michael and Nili T. Moghaddam, hereby submits its opposition to defendant Leonidas Iraheta's motion for disclosure of proffer information (CR 608), in which defendants Vladimir Iraheta (CR 613), Sergio Pantoja (CR 615) and James Wooten have joined (CR 609).

This opposition is based on the attached memorandum of points and authorities, the files and records in this case, and

1  such additional evidence and argument as may be presented at the

2  motion hearing.

3  DATED:      February 8, 2010

4                                      Respectfully submitted,

5                                      GEORGE S. CARDONA
                                       Acting United States Attorney
6
                                       CHRISTINE C. EWELL
7                                      Assistant United States Attorney
                                       Chief, Criminal Division
8

9                                      _____/S/_____
10                                     KEVIN M. LALLY
                                       BRIAN R. MICHAEL
11                                     NILI T. MOGHADDAM
                                       Assistant United States Attorneys
12                                     Violent & Organized Crime Section

13                                     Attorneys for Plaintiff
                                       United States of America
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   2

TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . 1

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTUAL & PROCEDURAL OVERVIEW . . . . . . . . . . . . . 2

     A.   CHARGES PENDING AGAINST DEFENDANTS . . . . . . . . 2

     B.   DISCOVERY PRODUCED TO DATE . . . . . . . . . . . . 4

     C.   DISCOVERY SOUGHT BY DEFENDANTS . . . . . . . . . . 5

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 6

     A.   OVERVIEW OF THE GOVERNMENT'S DISCOVERY OBLIGATIONS . 6

          1.   The Scope of Rule 16 . . . . . . . . . . . . . 7

          2.   Brady/Giglio Materials . . . . . . . . . . . 10

          3.   Jencks Act Materials . . . . . . . . . . . . 12

     B.   DEFENDANTS' DISCOVERY REQUESTS . . . . . . . . . . 13

          1.   Request For Production of Information
               Documenting Communications Between the
               Government and the Cooperating Defendant's
               Counsel Regarding Benefits to be Received,
               the Anticipated Information That the
               Cooperating Defendant Would Provide at a
               Proffer Session and the Post-Proffer
               Assessment of Accuracy and Completeness . . . 13

               a.   Pre-proffer discussions between the
                    government and counsel for cooperating
                    defendants do not constitute Brady
                    materials . . . . . . . . . . . . . . . 13

               b.   Contemporaneous and post-proffer
                    statements between counsel in which
                    the completeness and accuracy of the
                    proffered information is discussed do
                    not constitute Brady material . . . . . 19

-i-

TABLE OF CONTENTS (CONTINUED)

**PAGE(S)**

2.  Defendants' Request For the Production of Documentation Addressing Discussions Between Government Counsel and Government Case Agents Regarding the Accuracy and Completeness of Information Provided by a Cooperating Defendant in a Proffer Session . . . . . . . . . . . . 19

3.  Defendants' Request for Production of Proffer Reports of Cooperating Defendants . . . . . 21

4.  Defendants' Request for Production of Actual Benefits Provided to Cooperating Defendants . 22

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . 23

1

TABLE OF AUTHORITIES

2  **CASES:**                                                    **PAGE(S)**

3  Brady v. Maryland,
     373 U.S. 83 (1963)  . . . . . . . . . . . . . . . . .  passim

4

   Giglio v. United States,
5    405 U.S. 150 (1972)  . . . . . . . . . . . . . .  7, 10, 22

6  Pennsylvania v. Ritchie,
     480 U.S. 39 (1987) . . . . . . . . . . . . . . . . .  11

7

   Rovario v. United States,
8    353 U.S. 52 (1957) . . . . . . . . . . . . . . . . . .  5

9  Sanchez v. United States,
     50 F.3d 1448 (9th Cir. 1995) . . . . . . . . . . . .  12

10

   United States v. Agurs,
11   427 U.S. 97 (1976) . . . . . . . . . . . . . . . . .  10

12 United States v. Aichele,
     941 F.2d 761 (9th Cir. 1991) . . . . . . . . . . .  8, 12

13

   United States v. Bagley,
14   473 U.S. 667 (1985) . . . . . . . . . . . . . . . .  10, 11

15 United States v. Baxter,
     492 F.2d 150 (9th Cir. 1973) . . . . . . . . . . . . .  6

16

   United States v. Butler,
17   567 F.2d 885 (9th Cir. 1978) . . . . . . . . . . . .  11

18 United States v. Cadet,
     727 F.2d 1453 (9th Cir. 1984) . . . . . . . . . . .  8, 13

19

   United States v. Dominguez-Villa,
20   954 F.2d 562 (9th Cir. 1992) . . . . . . . . . . . .  12

21 United States v. Fort,
     472 F.3d 1106 (9th Cir. 2007) . . . . . . . . . .  9, 10, 21

22

   United States v. Gatto,
23   763 F.2d 1040 (9th Cir. 1985) . . . . . . . . . . . .  8

24 United States v. Marshall,
     532 F.2d 1279 (9th Cir. 1976) . . . . . . . . . . . .  8

25

   United States v. McMahon,
26   715 F.2d 498 (11th Cir. 1983) . . . . . . . . . . .  11

27

28                         -iii-

TABLE OF AUTHORITIES (CONTINUED)

**CASES:**                                                    **PAGEZ(S)**

United States v. Mills,
  641 F.2d 785 (9th Cir. 1981),
  cert. denied, 454 U.S. 902 (1981) . . . . . . . . . . . . 13

 United States v. Plunk,
  153 F.3d 1011 (9th Cir.),
  amended 161 F.3d 1195 (9th Cir. 1998) . . . . . . . . . . 11

United States v. Richter,
  488 F.2d 170 (9th Cir. 1977) . . . . . . . . . . . . . . . 8

United States v. Ross,
  511 F.2d 757 (5th Cir. 1975) . . . . . . . . . . . . . . . 8

United States v. Sai Keung Wong,
  886 F.2d 252 (9th Cir. 1989) . . . . . . . . . . . . . . . 5

United States v. Starusko,
  729 F.2d 256 (3d Cir. 1984) . . . . . . . . . . . . . . . 10

United States v. Taylor,
  802 F.2d 1108 (9th Cir. 1986),
  cert. denied, 479 U.S. 1094 (1987) . . . . . . . . . 12, 21

United States v. United States District Court,
  717 F.2d 478 (9th Cir. 1983) . . . . . . . . . . . . . . . 8

Weatherford v. Bursey,
  429 U.S. 545 (1977) . . . . . . . . . . . . . . . . . . . 6


**STATUTES**:

18 U.S.C. § 1201(a)(1) . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1201(c) . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1956(h) . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1959(a)(1) . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1959(a)(2) . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1959(a)(5) . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1962(d) . . . . . . . . . . . . . . . . . . . 2

-iv-

TABLE OF AUTHORITIES (CONTINUED)

**STATUTES:**                                                    **PAGE(S)**

18 U.S.C. § 3500   . . . . . . . . . . . . . . . .   7, 9, 12, 20

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . 2


**RULES**:

Fed. R. Crim. P. 16(a)(1) . . . . . . . . . . . . . . . 7, 9

Fed. R. Crim. P. 16(a)(1)(E)(I) . . . . . . . . . . . . 7, 9

Fed. R. Crim. P. 16(a)(2)   . . . . . . . . . . . 9, 10, 20, 21

MEMORANDUM OF POINTS AND AUTHORITIES

**I.**

**INTRODUCTION**

Defendant Leonidas Iraheta ("L. Iraheta") has filed a motion, which was joined in its entirety by co-defendants Vladimir Iraheta ("V. Iraheta"), Sergio Pantoja ("Pantoja") and James Wooten ("Wooten") (collectively "defendants"), to compel the production of information related to the process through which cooperating defendants proffer with the government. Specifically, defendants seek production of documents reflecting all pre-proffer communications between the government and counsel for the cooperating defendants regarding benefits to be offered and the subject matter to be addressed during the proffer session, documents memorializing the statements made by cooperating defendants during the proffer session, documents reflecting post-proffer communications between the government and its agents and/or counsel for the cooperating defendants regarding the accuracy and completeness of the proffer, and the actual benefits received by the cooperating defendant.  Except as set forth in this motion, defendants' requests for proffer-related discovery should be denied as the requests seek information that either, as a matter of law, need not be produced until trial or are materials that fall outside the proper scope of federal criminal discovery set forth in Rule 16, <u>Brady</u>, <u>Giglio</u> and the Jencks Act.

1                                  **II.**

2                        **FACTUAL & PROCEDURAL OVERVIEW**

3    A.   CHARGES PENDING AGAINST DEFENDANTS

4         Defendants L. Iraheta, V. Iraheta and Pantoja are jointly

5    charged in the Second Superseding Indictment with RICO conspiracy

6    in violation of 18 U.S.C. § 1962(d) (Count One).   (CR 343)

7    Defendant Pantoja also is charged with conspiracy to commit

8    narcotics trafficking in violation of 21 U.S.C. § 846 (Count

9    Two), narcotics distribution in violation of 21 U.S.C.

10   § 841(a)(1) (Counts Three through Seven), conspiracy to commit

11   money laundering in violation of 18 U.S.C. § 1956(h) (Count Ten),

12   conspiracy to commit violent crimes in aid of racketeering

13   ("VICAR") in violation of 18 U.S.C. § 1959(a)(5) (Counts Twenty-

14   Two, Twenty-Six and Twenty-Seven), VICAR in violation of 18

15   U.S.C. §§ 1959(a)(1), (a)(2), (Counts Twenty-Three, Twenty-Four,

16   Twenty-Five, Twenty-Eight and Twenty-Nine), conspiracy to commit

17   kidnaping in violation of 18 U.S.C. § 1201(c) (Count Thirty), and

18   kidnaping in violation of 18 U.S.C. § 1201(a)(1) (Count Thirty-

19   One).   (Id.).   Defendants L. Iraheta and V. Iraheta also are

20   charged with VICAR in violation of 18 U.S.C. § 1959(a)(1).

21   (Id.).   Defendant Wooten is charged with conspiracy to commit

22   VICAR in violation of 18 U.S.C. § 1959(a)(5) (Count Twenty-Two)

23   and VICAR in violation of 18 U.S.C. § 1959(a)(2).   (Id.).

24        The charges against defendants arise from their

25   participation in the activities of the CLCS Organization, an

26   associate-in-fact racketeering enterprise that utilized violence

27   and intimidation to support and advance the enterprise's illegal

28   objectives.   Notably for purposes of this motion, the RICO

                                    2

conspiracy charge alleges that: (1) the CLCS Organization is led by an incarcerated Mexican Mafia member who has maintained control of the enterprise despite being housed at ADX-Florence, the federal Supermax facility considered to be the most secure federal prison facility in the United States; (2) this Mexican Mafia member has utilized attorneys and other facilitators to circumvent prison security measures designed to limit his ability to engage in ongoing criminal conduct; and (3) the CLCS Organization, acting under the authority of this Mexican Mafia member and benefitting from the Mexican Mafia's control of Hispanic inmate populations throughout Southern California, imposes discipline, which can consist of extreme violence or murder, against those individuals who act against its interests in any manner, including through cooperation with law enforcement. (CR 343). Moreover, as to defendants, both the RICO conspiracy and the related VICAR charges allege multiple acts of intimidation and violence, including murder, committed by, at the direction of, or with the assistance of, defendants in furtherance of the CLCS Organization's interests.[1] (Id.).

_____

[1]    This particularly is true for defendant Pantoja, who is alleged in the Second Superseding Indictment to have served as a leader within the CLCS Organization who imposed discipline on individuals who violated CLCS Organization rules. (CR 343). This discipline included assaults of drug traffickers who failed to properly adhere to the narcotics distribution scheme overseen by defendant Pantoja, the shooting of a street vendor who refused to pay "rent" to the CLCS Organization during which the felony murder of an infant was committed, and the kidnaping/attempted murder of the CLCS Organization member whose misdirected shot killed the infant. (Id.). Moreover, while not specifically alleged against defendant Pantoja, the Second Superseding Indictment expressly alleges acts of intimidation committed by fellow enterprise members Cipriano Estrada and Stefani Brizuela

3

1    B.    DISCOVERY PRODUCED TO DATE

2         The discovery produced by the government has been

3    "voluminous." (Defendants' Motion p. 1).  To date, it includes

4    several hundred audio/video recordings and more than 8,800 pages

5    of records, reports and other documentation, including the LAPD

6    "murder books" for the VICAR murder alleged against defendants L.

7    Iraheta and V. Iraheta and the VICAR murder alleged against

8    defendants Pantoja and Wooten.[2]

9         The government, to date, has not produced select memoranda

10   memorializing post arrest statements and/or proffer sessions of

11   individuals who expressed a desire to cooperate with the

12   government, regardless of whether that desire actually resulted

13   in the execution of a cooperation plea agreement.  The government

14   also has not yet produced the plea agreements of defendants who

15   have entered into cooperation agreements.

16        The government temporarily has withheld production of these

17   materials based upon security considerations.  As the Court is

18   well aware, documentation reflecting any level of cooperation

19   with law enforcement is routinely used by inmates within the

20   prison system to identify, harm, and occasionally kill

21   cooperating defendants.  While this threat exists as to all

22   cooperating defendants, it is greatly heightened in cases such as

23

24   _____

     against witnesses to the felony murder of the infant --
25   allegations that defendants Estrada and Brizuela have admitted to
     in state court.

26
          [2]    A detailed description of the specific items that have
27   been produced to date is set forth in the government's opposition
     to defendant Pineda-Rivas' motion for a bill of particulars.  (CR
28   583).

                                    4

1  this, in which the cooperation is directed at criminal

2  enterprises with established histories of violence that operate,

3  at least in part, within the prison system and therefore, have

4  the ability to exact retribution against cooperators both at

5  pretrial detention facilities and at post conviction correctional

6  institutions.[3]

7  C.   DISCOVERY SOUGHT BY DEFENDANTS

8       Defendants seek to compel the production of four categories

9  of materials.  Defendants seek production of the dates and

10  contents of all discussions between the government and counsel

11  for each cooperating defendant regarding benefits to be received

12  by the cooperating defendant, counsel's expectation as to what

13  the cooperating defendant would say during a proffer session, and

14  the parties post-proffer assessment regarding the completeness

15  and accuracy of the cooperating defendant's proffer.[4]

16

17       [3]   Defendant Pantoja's joinder in this motion is somewhat
curious, as he has been a direct beneficiary of the government's
18  decision to temporarily withhold on security grounds statements
of those defendants who participated in interviews with the
19  government but who ultimately did not enter into cooperation plea
agreements.

20

21       [4]   Defendants motion asserts that the references within
the motion to "cooperators" extend to both cooperating defendants
22  and informants.  (Defendants' Motion p. 2, n. 3).  The terms
"cooperating defendants" and "informants" essentially are terms
23  of art reflecting different types of witnesses.  Moreover, both
classes of witnesses are subject to separate lines of case law
24  setting forth the circumstances under which the government is
obligated to produce materials relating to the cooperating
25  defendant/informant.  See Rovario v. United States, 353 U.S. 52,
59-60 (1957) (information regarding informants not testifying at
26  trial is privileged and thus generally not subject to discovery);
United States v. Sai Keung Wong, 886 F.2d 252, 255, 257 (9th Cir.
27  1989) ("[t]he government has a limited privilege to withhold the
identity of confidential informants.").  As the actual
28  information sought by defendants is directed at cooperating

(Defendants' Motion p.2).  Similarly, defendants seek production
of the dates and contents of all discussions between government
counsel and government case agents regarding their opinions as to
the completeness and accuracy of information obtained through the
cooperating defendant's proffer.  (Id.).  Defendants also seek
production of the dates and contents of all cooperating defendant
proffer sessions.  (Id.).  Finally, defendants seek production of
the actual benefits, if any, provided to cooperating defendants.
(Id.).

**III.**

**ARGUMENT**

A.   OVERVIEW OF THE GOVERNMENT'S DISCOVERY OBLIGATIONS

     "There is no general constitutional right to discovery in a
criminal case," and "the Due Process Clause has little to say
regarding the amount of discovery which the parties must be
afforded."  Weatherford v. Bursey, 429 U.S. 545, 559 (1977)
(internal quotations and citation omitted); see United States v.
Baxter, 492 F.2d 150, 173 (9th Cir. 1973) ("There is no
constitutional requirement that the prosecution make a complete
accounting to the defense of all evidence in its possession.").

     The Court's authority over discovery in a criminal case
stems from three sources.  First, Rule 16 establishes guidelines
for pretrial production by the government, as well as reciprocal
discovery by the defendant, of certain limited categories of

defendants, not informants, and the government presently does not
intend to utilize informant testimony at trial, the government
has limited its response to addressing the extent to which
production of requested information relating to cooperating
defendants is appropriate.

material, including items "material to preparing the defense."

Fed. R. Crim. P. 16(a)(1)(E)(I).  Second, under Brady v.

Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405

U.S. 150 (1972), the government is obliged to produce evidence in

its possession that is favorable for the defense.  Finally, under

18 U.S.C. §§ 3500 et seq. (the Jencks Act), statements by a

government witness that relate to the subject matter of the

witness's testimony are required to be disclosed to the defense

after the witness has testified on direct examination.

   1.   The Scope of Rule 16

   Federal Rule of Criminal Procedure 16(a) sets forth the

basic framework for pretrial discovery by the parties.

Armstrong, 517 U.S. at 461.  Rule 16(a)(1) lists five categories

of materials that must either be produced or made available for

inspection: (1) written or recorded statements or confessions of

a defendant;[5] (2) a defendant's grand jury testimony; (3) a

defendant's prior criminal record; (4) results of reports of

physical or mental examinations and of scientific tests or

experiments; and (5) books, papers, documents, photographs, and

tangible objects in the possession of the government and material

to the preparation of the defense or intended to be used in the

government's case-in-chief.

   Rule 16(a)(1)(E)(I) states that a defendant is entitled to

discovery of documents if such documents are "within the

_____

   [5]   In those limited instances in which the government
temporarily has withheld production of statements made by
defendants with whom it ultimately did not enter into cooperation
plea agreements, it has done so with the understanding of
respective counsel based upon security considerations.

government's possession, custody or control" and the defendant
can show they are "material to preparing the defense."  In
determining whether the federal government can be deemed to have
constructive possession of documents in state custody, the Ninth
Circuit repeatedly has held that "federal prosecutors are never
deemed to have access to material held by state agencies."
United States v. Santiago, 46 F.3d 885, 894 (9th Cir. 1995)
(citing United States v. Aichele, 941 F.2d 761, 764 (9th Cir.
1991); United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir.
1985).  Moreover, in establishing materiality, the defendant must
do more than specify the items he is seeking, since materiality
is "not satisfied by a mere conclusory allegation that the
requested information is material to preparation of the defense."
United States v. Cadet, 727 F.2d 1453, 1466 (9th Cir. 1984);
United States v. Richter, 488 F.2d 170, 175 (9th Cir. 1977).
Instead, the burden is on the defendant to make a prima facie
showing of materiality in order to obtain discovery.  Cadet, 727
F.2d at 1468; United States v. United States District Court, 717
F.2d 478, 480 (9th Cir. 1983).  Even if the defendant has never
seen the requested documents, a concrete showing of materiality
is still required.  United States v. Ross, 511 F.2d 757, 764 (5th
Cir. 1975).  To show materiality, the defense must demonstrate
that the evidence would "alter the quantum of proof" in the
defense's favor.  United States v. Marshall, 532 F.2d 1279, 1285
(9th Cir. 1976).

    Moreover, the Supreme Court has made clear that "material to
preparing the defense" in the Rule 16 context "means the
defendant's response to the Government's case in chief."

8

Armstrong, 517 U.S. at 462.   In Armstrong, the Court held that the defendant was not entitled to Rule 16 discovery to support his pretrial motion to dismiss based on selective prosecution. Id. at 463.   The Court reasoned that the plain language of Rule 16 makes clear that the term "defense" does not include "any claim that is a 'sword,' challenging the prosecution's conduct of the case," but rather "encompasses only the narrower class of 'shield' claims, which refute the Government's arguments that the defendant committed the crime charged."   Id. at 462.

In addition to carefully delineating the types of materials that properly are discoverable, Rule 16 also expressly delineates, under the heading "Information Not Subject to Disclosure" specific types of materials for which production is not required and may not be compelled.   Specifically, Rule 16(a)(2) states, in pertinent part[6]:

> [T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.   Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

The Ninth Circuit has held that this provision creates an exception to Rule 16(a)(1)(E) and has found that it should be interpreted expansively so as to include not only classic work product but all documents encompassed within the plain language

---

[6]    The provision technically starts with the clause "except as Rule 16(a)(1) provides otherwise."   The Ninth Circuit, however, has found that this clause's inclusion was the result of scrivener's error.   United States v. Fort, 472 F.3d 1106, 1110 n.2 (9th Cir. 2007).

of the text.  See Fort, 472 F.3d at 1116, 1119-20 (extending
application of Rule 16(a)(2) to state generated police reports
created prior to federal law enforcement involvement in and
adoption of state investigation in connection with a RICO
prosecution).

    2.   Brady/Giglio Materials

In Brady, the Supreme Court held that "suppression by the
prosecution of evidence to an accused upon request violates due
process where the evidence is material either to guilt or
punishment." Brady, 373 U.S. at 97.  Technically, Brady and
Giglio, which sets out a subset of Brady materials for witness
impeachment information, are not discovery rules like Rule 16 or
the Jencks Act, but instead are "rule(s) of fairness and minimum
prosecutorial obligation." United States v. Starusko, 729 F.2d
256, 262 (3d Cir. 1984).

Under Brady, the government is obligated to produce all
"evidence favorable to the accused" that "is material either to
guilt or punishment." Brady, 373 U.S. at 87.  Evidence is
material "only if there is a reasonable probability that, had the
evidence been disclosed to the defense, the result of the
proceeding would have been different." United States v. Bagley,
473 U.S. 667, 682 (1985); see United States v. Agurs, 427 U.S.
97, 104 (1976) ("A fair analysis of the holding in Brady
indicates that implicit in the requirement of materiality is a
concern that the suppressed evidence might have affected the
outcome of the trial."). In Giglio and its progeny, the Court
extended Brady to all material information that might be used to
impeach a government witness, such as a plea agreement between

10

the witness and the government, the witness' criminal record, and

a witness' prior inconsistent statements.  Bagley, 473 U.S. at

676; See also, United States v. Butler, 567 F.2d 885 (9th Cir.

1978).

A defendant has no right to examine the government's files

for exculpatory material.  As the Supreme Court has explained:

> A defendant's right to discover exculpatory evidence
> does not include the unsupervised authority to search
> through the [government's] files.  Although the eye of
> an advocate may be helpful to a defendant in ferreting
> out information, this Court has never held -- even in
> the absence of a statute restricting disclosure -- that
> a defendant alone may make the determination as to the
> materiality of the information.  Settled practice is to
> the contrary.  In the typical case where a defendant
> makes only a general request for exculpatory material
> under [Brady], it is the [government] that decides
> which information must be disclosed.  Unless defense
> counsel becomes aware that other exculpatory evidence
> was withheld and brings it to the court's attention,
> the prosecutor's decision on disclosure is final.
> Defense counsel has no constitutional right to conduct
> his own search of the [government's] files to argue
> relevance.

Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987).  Moreover, the

government is not obligated under Brady to furnish information

that the defendant already has or, with any reasonable diligence,

can obtain for himself.  United States v. McMahon, 715 F.2d 498,

501 (11th Cir. 1983).

In addition, similar to Rule 16, Brady does not require the

government to produce evidence that is not within the

prosecution's possession.  United States v. Plunk, 153 F.3d 1011,

1028 (9th Cir.), amended 161 F.3d 1195 (9th Cir. 1998) (notes in

the possession of witness' attorney are not in the possession of

the government).  For example, the government need not search

state files beyond its control for potentially impeaching

11

information against a witness if it is unaware that the information exists.  <u>See, e.g.</u>, <u>Sanchez v. United States</u>, 50 F.3d 1448, 1453 (9th Cir. 1995) (holding that the government did not violate <u>Brady</u> by failing to disclose the fact that two witnesses had been state informants, since it "was not aware of the alleged <u>Brady</u> material"); <u>Aichele</u>, 941 F.2d at 764 (explaining that "[t]he prosecution is under no obligation to turn over materials not under its control," and noting that the material at issue "was under the control of California officials"); <u>United States v. Dominquez-Villa</u>, 954 F.2d 562, 566 (9th Cir. 1992) (holding that the government is under no duty to "review state law enforcement files not within its possession or control").  In determining whether evidence is within the government's possession and control, the court looks at whether the United States Attorney's Office had "knowledge of and access to" the evidence sought.  <u>See</u> <u>Santiago</u>, 46 F.3d at 893-94.

    3.   <u>Jencks Act Materials</u>

    The Jencks Act states, in pertinent part, that:

> in any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a government witness or prospective government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. §§ 3500, et seq.  It is well established that courts have no authority to compel early disclosure of Jencks Act material in violation of the Act's plain language.  <u>See, e.g.</u>, <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 (9th Cir. 1986), <u>cert. denied</u>, 479 U.S. 1094 (1987).  Moreover, the Ninth Circuit has held that it is an abuse of discretion for a court to compel

1  the production of statements of witnesses that the prosecution

2  does not intend to call at trial.  <u>Cadet</u>, 727 F.2d at 1469; <u>see</u>

3  <u>also</u> <u>United States v. Mills</u>, 641 F.2d 785, 790 (9th Cir. 1981),

4  <u>cert</u>. <u>denied</u> 454 U.S. 902 (1981).

5  B.   <u>DEFENDANTS' DISCOVERY REQUESTS</u>

6        As noted above, there are only three sources that mandate

7  discovery under federal law:  Rule 16, <u>Brady</u> and its progeny, and

8  the Jencks Act.  Except as noted below, none of these sources

9  supports defendants' requests.

10       1.   <u>Request For Production of Information Documenting
             Communications Between the Government and the</u>

11           <u>Cooperating Defendant's Counsel Regarding Benefits to
             be Received, the Anticipated Information That the</u>

12           <u>Cooperating Defendant Would Provide at a Proffer
             Session and the Post-Proffer Assessments of Accuracy</u>

13           <u>and Completeness</u>

14           a.   <u>Pre-proffer discussions between the government and
                  counsel for cooperating defendants do not</u>

15                <u>constitute Brady materials</u>

16       On the grounds that such information constitutes <u>Brady</u>

17  material, defendants request production of documents

18  memorializing the substance of pre-proffer communications between

19  the government and counsel for cooperating defendants regarding

20  the subject matter of upcoming proffers as well as potential

21  benefits that might be available to the cooperating defendant.[7]

22  As a preliminary matter, it bears noting that defendants' <u>Brady</u>

23

24

25       [7]   Defendants do not claim that the requested materials

26  are subject to discovery under Rule 16 or the Jencks Act, nor
    could they as documents memorializing pre-proffer communications

27  between counsel do not fall within the categories of discoverable
    materials set forth in Rule 16 and do not constitute witness

28  statements under the Jencks Act.

claim is not based on controlling precedent[8] or specific facts
arising from this case but rather from defendants' misleading
descriptions of how the "proffer system" purportedly operates.[9]
Moreover, rather than attempt to show how the requested
information qualifies as Brady material under the law, defendants
simply make sweeping pronouncements that the requested

[8]    While defendants cite numerous cases in which courts
have applied Brady to specific fact patterns, many of the cited
cases have no applicability to the motion other than to stand as
cautionary symbols regarding the importance of the government's
adherence to its Brady obligations and absolutely none of these
cases directly address the unique scope of the Brady request
presently before the court.

[9]    The government would be remiss if it did not, at least
briefly, address defendants' significantly self-serving portrayal
of the proffer process -- a process that defendant would have the
Court believe is orchestrated by attorneys who vet and shape
specific items of a cooperating defendant's testimony in advance
of the proffer session and who knowingly utilize proffer sessions
to correct and rehearse testimony so that it best fits the
government's understanding of the events at issue, even if that
understanding is false.  (Defendants' Motion p. 2-3).  Notably
absent from defendants' description is an acknowledgment that most
proffers, including the proffers in this case, arise after a
defendant has "flipped" and given a post arrest statement that
both implicates the defendant in the charged criminal conduct and
addresses many of the topics that will be the subject matter of
proffer sessions that are later held.  Moreover, while attorney
proffers that provide detailed accounts of expected testimony are
somewhat common in fraud cases, they are, in the undersigned
counsel's experience, uncommon in gang prosecutions.  In fact,
the government is not aware of any written attorney proffers that
were utilized in this case.  Furthermore, defendants wrongly
imply that repeated proffer sessions typically are conducted for
the purpose of correcting parts of the cooperating defendant's
proffered information that the government deems inaccurate.  Most
multi-day proffers are caused by the scheduling considerations of
both the parties and the Marshal's Service, the sheer volume of
information to discuss, and the need to probe further into select
areas of importance.

1  information is essentially <u>Brady</u> material <u>per se</u>.  (Defendants'

2  Motion p. 4).  It is not.

3      To be subject to production as <u>Brady</u> material, the

4  information sought must be favorable to the accused and material.

5  <u>Brady</u>, 373 U.S. at 87.  The requested information is neither,

6  much less both.  Specifically, the information is not favorable

7  to the accused as the requested information does not constitute

8  admissible evidence nor could it lead to the discovery of

9  admissible evidence.  Although not the government's practice in

10  this case, had the government and counsel for a cooperating

11  defendant participated in a highly detailed discussion regarding

12  the specific subject matter to be addressed in an upcoming

13  proffer session, the content of the discussion would be

14  inadmissible hearsay.  Moreover, this conversation could serve as

15  impeachment material against a cooperating defendant only if it

16  could be shown by credible -- as opposed to purely conjectural --

17  information that the communication was relayed to the cooperating

18  defendant, which information could only be obtained by piercing

19  privileged communications between counsel and the client.[10]

20  This, in turn, would require a showing sufficient to establish

21  the crime-fraud exception to the privilege -- a threshold that

22  far surpasses the speculative claims on which this discovery

23  motion is founded.[11]  Therefore, as the information sought would

24

25      [10]    To constitute proper impeachment, defense counsel also
   would need a good faith belief that the cooperating defendant's
26  testimony was influenced by receipt of this communication.

27      [11]    As noted above, the government is not aware of any
   attorney proffers in this case in which an attorney for a
28  cooperating defendant provided a description of his client's

1   not be favorable to the accused, it does not meet the first prong

2   of the Brady analysis and thus, the information could not

3   constitute Brady material.

4       Even if defendants properly could establish that the

5   requested information was favorable to the accused, they have not

6   and cannot make the requisite showing of materiality.  To prevail

7   on this requirement, defendants would have to show that the

8   substance of the communications between the government and

9   counsel for a cooperating defendant not only reached the

10  cooperating defendant but also tainted the cooperating

11  defendant's participation in the case in such a manner that it

12  more probably than not would alter the outcome of the proceeding.

13  Again, defendants have provided nothing more than unfounded

14  speculation in support of their position that the information

15  sought is material.  As defendants are unable to carry their

16  burden on the issue of materiality, they likewise have failed to

17  meet the second prong of the Brady analysis and thus, the

18  requested information could not constitute Brady material.

19

20

21

22  likely testimony that was sufficiently detailed as to warrant
    belief that the information came directly from the cooperating
23  defendant as opposed to merely being the attorney's general, and
    potentially mistaken, understanding as the information that might
24  be provided by the client in a proffer.  Moreover, to the extent
    that highly general discussions were had with counsel regarding
25  the basic areas of inquiry that would be pursued, the government
    is not aware of any instance in which a cooperating defendant
26  provided information that was inconsistent with counsel's
    representations and thus, does not believe that it is in
27  possession of information from a cooperating defendant that would
    be considered a material variance from a representation made by
28  counsel.

Therefore, as defendants have failed to establish a <u>Brady</u> claim,
their discovery request should be denied.

Equally unavailing is defendants' claim that documents
memorializing preliminary discussions regarding benefits sought,
but not secured, by counsel for a cooperating defendant
constitute <u>Brady</u> material.[12]   Again, defendants fail to establish
that the information is favorable to the accused and that it was
material to the proceedings as required under <u>Brady</u>.   Again,
defendants instead make broad, yet unfounded, claims that the
requested materials constitute <u>Brady</u> materials.   Again, they do
not.

First, defendants have not and cannot establish that the
requested information is favorable to the accused -- <u>i.e.</u>, either
involves admissible evidence or is likely to lead to the
discovery of admissible evidence that will benefit defendants.
The benefits provided to cooperating defendants are set forth in
the plea agreement.[13]   Moreover, as part of the cooperating
defendant's change-of-plea proceeding, the Court inquires of the

---

[12]   Defendant cites <u>United States v. Williams</u>, 954 F.2d
668, 672 (11th Cir. 1992) for the proposition that "unconsummated
promises or rewards must be disclosed."  (Defendants' Motion p.
7).  Defendant's expansive reading of <u>Williams</u> is misplaced, as
the case simply stands for the proposition that a trial jury
should be provided with full disclosure of the actual benefits
received by a government informant.  <u>Id</u>.

[13]   Defendants claim that they should be provided with
information relating to discussions between counsel that address
the range of potential departures that could be earned for
substantial assistance.  (Defendants' Motion p. 5).  It is the
government's policy not to make representations regarding the
extent of any departure motion that might be filed until such
time as cooperation is complete.

parties, and thereby confirms, that the plea agreement sets forth
the sum total of benefits to which the parties have agreed.  It
is the existing and prospective benefits expressly set forth in
the executed plea agreement that both frame and define the
cooperating defendant's expectations on the issue of expected
benefits at the time of trial, which is when the jury is called
on to assess the cooperating defendant's credibility.
Information relating to the benefit-related pre-plea negotiating
position of <u>counsel</u> for the cooperating defendant simply would
not be relevant to this inquiry.[14]  Second, for the same basic
reason, defendants cannot establish materiality, as the issue of
the cooperating defendant's credibility will rest not on
preliminary discussions of potential benefits by his counsel but
rather on the actual benefits to which defendant and the
government agreed in the plea agreement.  Therefore, the fact
that counsel may have sought benefits on a cooperating
defendant's behalf that were ultimately not included within the
plea agreement signed by the defendant simply does not constitute
the type of information that could alter the outcome of the
proceedings as to defendants.  Having thus failed to establish a
proper <u>Brady</u> claim, defendants' request for this information
should be denied.

---

[14]    To impute knowledge of a benefit request to the
cooperating defendant, there would have to be evidence that the
request emanated from or was approved by the cooperating
defendant, as opposed to merely being the independent work of an
effective attorney.

18

b.   <u>Contemporaneous and post-proffer statements
between counsel in which the completeness and
accuracy of the proffered information is discussed
do not constitute Brady material</u>

Defendants also claim that discussions between the
government and counsel for cooperating defendants that take place
during or following the proffer session and that reflect the
parties' assessment of the quality of the proffered information
constitute <u>Brady</u> material that must be produced.  As with the
pre-trial conversations between counsel, any communications
between counsel at the time of, or following, the proffer could
not properly be considered favorable to the accused as the
statements would be irrelevant, inadmissible hearsay that would
not likely lead to the discovery of admissible evidence, as
privilege considerations would preclude inquiry into whether the
communications were disseminated to the cooperating defendant.
In addition, the communications would not be material absent a
showing, which does not exist here, that the cooperating
defendant learned of the communications and subsequently altered
testimony in a manner would impact the ultimate resolution of the
case.  Defendants, therefore, have made neither of the requisite
showings and thus, their <u>Brady</u> claims fail.

2.   <u>Defendants' Request for the Production of Documentation
Addressing Discussions Between Government Counsel and
Government Case Agents Regarding the Accuracy and
Completeness of Information Provided by a Cooperating
Defendant in a Proffer Session</u>

Defendants, again relying on <u>Brady</u>, request production of
the "content and date(s) of all discussions between the Assistant
United States Attorneys and the case agents regarding their
opinion(s) as to the completeness and truthfulness of the

19

proffer." (Defendants' Motion P. 2). As with their other
requests, however, the information sought does not qualify as
Brady material. Specifically, the requested information is not
favorable to the accused as the personal opinions of government
counsel or the case agents on the issue of cooperator credibility
do not constitute admissible evidence, nor can such personal
opinions likely lead to the discovery of relevant admissible
evidence. Similarly, such information could not credibly be
considered material, in that the requested opinions, if produced,
would be inadmissible and therefore, would not impact the
proceedings such that there would be a reasonable probability
that the results of the proceedings would be altered in
defendants' favor. Thus, defendants' Brady claim fails and the
request should be denied.[15]

---

[15]    The information sought also is not subject to
production under Rule 16, because it is textbook work product
that Rule 16(a)(2) expressly precludes from being discovered.
Similarly, the opinions of government counsel and the case agents
are not subject to production under the Jencks Act. Simply
stated, government counsel will not be a witness in the
proceeding as required for production under the Jencks Act. In
the event that the case agents are witnesses at trial, the
subject matter of their testimony will not relate to their
opinions regarding whether a particular cooperating defendant
provided complete and accurate information during a proffer
session and thus, any statements made by the agents in this
regard would not fall within the scope of witness statements as
defined under 18 U.S.C. § 3500(b). Moreover, in the event that
such testimony could be deemed to fall within the scope of the
Jencks Act, the request still fails for being statutorily
premature. 18 U.S.C. § 3500(b).

3.   <u>Defendants' Request for Production of Proffer Reports of Cooperating Defendants</u>[16]

Defendants' request the production of "the content and date(s) of all actual proffers by the informant(s) and/or cooperator(s)." (Defendants' Motion p. 2). This request is essentially a premature request for production of Jencks Act materials and thus should be denied as untimely.[17]  <u>See</u> <u>Taylor</u>, 802 at 1108 (courts have no authority to compel early disclosure of Jencks Act material in violation of the Act's plain language). Nevertheless, as the Court is aware, it is the practice of the government to produce Jencks Act materials in advance of trial to facilitate an efficient trial. Provided that defendants agree to the reciprocal disclosure of Jencks Act materials and that an appropriate protective order is in place,[18] the government will agree to voluntarily provide such information to defendants

[16]   While defendants' motion does not expressly request the production of cooperating defendant plea agreements, it requests information regarding benefits and witness statements, each of which are incorporated within the executed plea agreement.  The government will produce these plea agreements at the same time it produces the cooperating defendants' statements and benefit information –– thirty days before trial.

[17]   As discussed above, proffer statements of cooperating defendants technically are not subject to discovery under Rule 16(a)(2).  <u>Fort</u>, 472 at 1119.  Likewise, proffer statements constitute <u>Brady</u> material only to the extent that exculpatory information or inconsistent statements are memorialized within the report and, in such circumstances, only the specific <u>Brady</u> material need be produced.

[18]   To reduce the legitimate security concerns detailed above, the government will be preparing a protective order that precludes the copying and/or dissemination of items produced subject to its terms and that identifies the parties authorized to review such materials.

thirty days before trial.  Moreover, the government is aware
that, as it relates to the VICAR murder charges against
defendants, statements made by cooperating defendants during
proffer sessions that inculpate defendants constitute critical
evidence of which defendants otherwise would not be apprised.
While the government is not obligated to produce such statements
at this time, it will voluntarily produce the proffer reports
within its possession[19] that address the murders within two weeks
of when an appropriate protective order is filed with the Court.

> 4.   <u>Defendants' Request for Production of Actual Benefits
>      Provided to Cooperating Defendants</u>

Defendants' request for production of information detailing
the actual benefits received by cooperating defendants is
premature and should be denied as untimely.  Such information is
only discoverable as <u>Giglio</u> material for testifying witnesses.
As trial in this case is not scheduled until October 2010, the
government has not determined which cooperating defendants it
will call at trial.  The government, however, is aware of its
discovery obligations relating to such benefits and will produce
thirty days before the trial date a memorandum memorializing all
benefits provided to the government's trial witnesses.  The
government respectfully submits that production of the benefits

---

[19]   The Los Angeles County District Attorney's Office
("LADA") is separately prosecuting several participants to the
shooting with which Pantoja and Wooten are charged.   In
connection with those proceedings, the LADA independently has
conducted proffers of potential witnesses and generated its own
reports.   To the extent that it has knowledge of and access to
such documents, the government will include them within its
production.   <u>Santiago</u>, 46 F.3d at 894.

1   information in this manner is appropriate as it will: (1) greatly

2   lessen the security risk experienced by cooperating defendants

3   who ultimately are not called to testify; (2) reduce the security

4   risk experienced by cooperating defendants who do testify; and

5   (3) provide defendants' counsel, all of whom are highly

6   experienced trial attorneys, with adequate time to prepare cross-

7   examinations for the testifying witnesses who received benefits.

8                                 **IV.**

9                             **CONCLUSION**

10       For the aforementioned reasons, the government respectfully

11  submits that, except as limited above, defendants Leonidas

12  Iraheta's Motion for Disclosure of Proffer Information, in which

13  defendants Vladimir Iraheta, Sergio Pantoja, and James Wooten

14  have joined, should be denied.

15  DATED: February 8, 2010

16                            Respectfully submitted,

17                            GEORGE S. CARDONA
                              Acting United States Attorney
18
                                    /S/
19                            _____
                              KEVIN M. LALLY
                              BRIAN R. MICHAEL
20                            NILI T. MOGHADDAM
                              Assistant United States Attorneys
21
                              Attorneys for Plaintiff
22                            UNITED STATES OF AMERICA

23

24

25

26

27

28

                                  23