MARCIA A. MORRISSEY
State Bar No. 66921
2115 Main Street
Santa Monica, California 90405
Telephone: (310) 399-3259
Facsimile:  (310) 399-1173
E-Mail:     MorrisseyMA@aol.com

CHARLES PEREYRA-SUAREZ
State Bar No. 67106
Union Bank Plaza, Suite 3200
445 South Figueroa Street
Los Angeles, California 90071
Telephone: (213) 430-4777
Facsimile: (213) 623-1890
E-Mail:     cpereyra@cpslawfirm.com

Attorneys for Defendant
VLADIMIR IRAHETA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VLADIMIR IRAHETA, )<br>)<br>Defendant. )<br>)<br>) | CASE NO.  CR 07-1172-DDP<br><br>**VLADIMIR IRAHETA'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR DISCLOSURE OF GANG INFORMATION**<br><br>Date:   April 26, 2010<br>Time:   3:00 p.m.<br>Court:  Hon. Dean D. Pregerson |

Vladimir Iraheta, by his counsel, submits this reply to the Government's Opposition to Defendant Leonidas Iraheta's Motion for Disclosure of Gang Information (Doc. 754).  This reply is based on the attached memorandum of points and authorities, the files and records in this case, and such additional

1  evidence and argument as may be presented before or at the hearing on this
2  motion.

4  DATED:  April 21, 2010                    Respectfully submitted,
5                                            MARCIA A. MORRISSEY
                                             CHARLES PEREYRA-SUAREZ
7                                    By:    /s/ Marcia A. Morrissey
8                                            Marcia A. Morrissey
9                                            Attorneys for Defendant
                                             VLADIMIR IRAHETA

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    Introduction**

3       On April 5, 2010, counsel for Leonidas Iraheta filed a Notice of Motion
4  and Motion for Discovery of "Gang" Information, and supporting memorandum of
5  points and authorities (Doc. 742), in which Vladimir Iraheta has joined (Doc. 743).
6  The existence of a racketeering enterprise, in this case an alleged street gang
7  referred to as the "CLCS Organization," is an essential element of the two charges
8  against Vladimir Iraheta and Leonidas Iraheta.  Second Superseding Indictment
9  ("SSI") at 4, ¶ 1, 15, ¶ 2, 88, ¶¶ 1-3.   The discovery motion seeks information
10 about the alleged enterprise and evidence in the possession of law enforcement
11 authorities tending to show that Leonidas Iraheta and Vladimir Iraheta are
12 members of that enterprise.   (Doc. 742 at 3-4).

13 **II.    The 18th Street "Gang Book"**

14      One of the specific items of information requested is that the prosecution
15 disclose "the 18th Street gang book." (*Id.,* at 4). This gang book contained
16 photographs of 18th Street gang members;  in 2001, it was shown to at least one
17 percipient witness to the homicide alleged in Count 21 for the purpose of eliciting
18 an identification of individuals seen in the area of the homicide on the night it was
19 committed.

20      The prosecution's response to the request for production of the 18th Street
21 gang book as it existed at the time it was shown to any percipient witness to the
22 Barajas homicide is as follows:

23     Repeated efforts to locate the "gang book" that would have been
24     current in July 2001 have been undertaken.  Those efforts, which have
25     included searches of both the Rampart Division and its archives, have
26     proven unsuccessful.  Several 18th Street gang books that were
27     generated in the mid-to-late 1990s, however, were located.  The
28

1  government will make these gang books available to defendants'
2  counsel for inspection.
3 (Doc. 754 at 1 n. 2).  This response is inadequate.  For the reasons discussed
4 below, the prosecution should be required to state with particularity the extent of
5 the "searches" undertaken and explain how, when and why this gang book was
6 lost or destroyed.
7  On July 21, 2001, at approximately 2:50 a.m., Los Angeles Sheriff's
8 Department Deputy Jim Ching was parked along the east curb line of Columbia
9 Avenue just north of Third Street, facing northbound, conducting surveillance on
10 an unrelated case.   He observed three young male Hispanics walking southbound
11 on Columbia.   The first individual was approximately 18 to 20 years old, 5'10",
12 240 lbs., with a shaved head and clean shaven; this individual was spray painting,
13 i.e., "crossing out rival gang graffiti" with his left hand.  The second male
14 Hispanic was 18 to 20 years old, 5'10" to 6' 0", approximately 170 lbs, with a
15 shaved head and light facial hair; this individual was "acting as a lookout for the
16 first person."  The third male Hispanic stood apart from the other two, and
17 appeared to be holding an unknown object under his shirt, in front of his abdomen.
18  After Deputy Ching made these observations,  the three young men crossed
19 Third Street and continued southbound on Columbia, out of his sight.
20 Approximately two minutes later, Deputy Ching heard gunfire coming from south
21 of his location.  He left his post and drove around the area, but did not see
22 anything else.  He then drove to the scene of the shootings and identified himself
23 to Los Angeles Police Department personnel.
24  As Deputy Ching returned to his surveillance location, he saw a dark color
25 SUV driving southbound on Columbia at Third Street.  He described the driver as
26 heavy set with a shaved head.  At that time he could not determine whether there
27 were any other persons in the car because of its heavily tinted windows.  Deputy
28 Ching stated that "[a]lthough the driver at first resembled the heavy set Hispanic

1  (spray painting) I described earlier, I'm pretty sure it was not him." Deputy Ching
2  followed the dark SUV, which drove around the neighborhood before stopping
3  northbound at Burlington Avenue and Fifth Street.  At this time, Deputy Ching
4  saw two persons get out of the car and enter an apartment building on the
5  southwest corner of Burlington and Fifth Street.  Deputy Ching did not get a good
6  look at these persons, and could only say that one had a shaved head and did not
7  appear to be one of the three people he had seen on the street earlier.  (Exhibit A).
8        On August 29, 2001, a Los Angeles Police Department detective
9  interviewed Deputy Ching and obtained the statement that is Exhibit A to this
10 reply.  Notes of this interview establish that Deputy Ching was shown "the 18th
11 Street photo books/I cards-neg. I.D."  (Exhibit B).
12       On June 23, 2008, almost seven years after his initial statement regarding
13 the events at issue, Deputy Ching was reinterviewed.  He was asked to look at a
14 series of "six pack" photographs to see if he recognized anyone from that night.
15 The first six pack included a picture of Vladimir Iraheta in position number three.
16 Deputy Ching allegedly "identified" the photograph of Vladimir Iraheta, "saying
17 'by the shape of his head was the first thing that caught my attention.  Most like
18 one of the persons tagging.'"  A photo lineup containing a picture of Eduardo
19 Hernandez in position number five was also shown to Deputy Ching and he
20 identified the photo of Eduardo Hernandez as "look[ing] most like the guy I saw
21 driving the vehicle after the shooting."  (Exhibit C).
22       The photographs that were shown to Deputy Cheng in 2001 are critical
23 evidence.   As the prosecution itself has declared, "Defendants L. Iraheta and V.
24 Iraheta's membership in the CLCS is well documented . . . ." (Doc. 754 at 4, n. 6).
25 Photographs of Vladimir Iraheta and Eduardo Hernandez were in the 18th Street
26 gang book that was shown to Deputy Ching in 2001, and his failure to identify Mr.
27 Iraheta or Mr. Hernandez at that time is exculpatory evidence that the government
28

must provide under *Brady*, *Giglio* and their progeny.[1]  *See also* Ninth Circuit Model Jury Instruction No. 4.14, which provides that "any inconsistent identifications made by the eyewitness" are to be considered in evaluating eyewitness identification testimony.   Without production of the precise materials that were shown to Deputy Ching in 2001, Mr. Iraheta and Mr. Hernandez will be denied their Sixth Amendment rights to confrontation and cross-examination of witnesses and to present a defense, as well as their right under the Eighth Amendment to fair and reliable fact finding in this capital case.

The prosecution's failure to preserve the gang book that was shown to any percipient witness in 2001 also implicates the defendants' due process right under *California v. Trombetta*, 467 U.S. 479, 489 (1974).  The gang book that was shown to witnesses who did not identify Vladimir Iraheta, Eduardo Hernandez or Leonidas Iraheta as one the "taggers" or the driver of the SUV  has "constitutional materiality" within the meaning of *Trombetta*.  That is, the gang book was evidence that (1) has "an exculpatory value that was apparent before the evidence was destroyed," and (2) is "of such a nature that the defendant would not be able to obtain comparable evidence by other reasonably available means."  *Id*., at 489.  *See also United States v. Cooper*, 983 F. 2d 928, 929 (9th Cir. 1983) (destruction of lab equipment and glassware seized from an alleged methamphetamine laboratory warranted dismissal of the indictment because the equipment "can neither support nor undermine [defendants'] repeated assertion that their lab lacks physical capacity to manufacture methamphetamine").

---

[1]  *Brady v. Maryland,* 373 U.S. 83, 104, 83 S. Ct. 1194, 10 L .Ed.2d 215 (1963);  *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed.2d 799 (1972); *United States v. Bagley,* 473 U.S. 667, 674, 105 S. Ct. 3375, 87 L. Ed.2d 481 (1985).

### III. The Government's Assertion that the Cal-Gangs Database Is Not Within Its Possession or Control Does Not Excuse Non-Disclosure

The government argues that "[t]he Cal-Gangs database, as its name indicates, is a database operated by the State of California, namely the California Department of Justice and . . . is thus not within the possession or control of the government." (Doc. 754 at 2 n. 3). This argument must be rejected. The prosecution's obligation to disclose *Brady* material reaches beyond information within the immediate possession or control of the Office of the United States Attorney for the Central District of California. *Kyles v. Whitley*, 514 U.S. 519, 437 (1995) ("the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"). The government is not excused from disclosing what it does not know but could have learned. *Carriger v. Stewart*, 132 F. 3d 463, 479 (9th Cir. 1997) (granting habeas relief where the record is not conclusive as to whether the trial prosecutors ever possessed the exculpatory evidence at issue and stating that "[t]he prosecution's actual awareness (or lack thereof) of exculpatory evidence in the government's hands . . . is not determinative of the prosecution's disclosure obligations. [citation omitted] Rather, the prosecution has a duty to learn of any exculpatory evidence known to others acting on the government's behalf.").

### IV. The Cal-Gangs Material is Discoverable Under Rule 16

Federal Rule of Criminal Procedure 16 (a) (1) (E) provides that the defendant is entitled to discovery of documents "within the government's possession, custody or control" upon a showing that they are "material to preparing the defense." The government recognizes, as it must, that in this context, "material to preparing the defense" means "the defendant's response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462 (1996). (Doc. 754, at 2).

1        The prosecution's assertion that the requested material is not relevant to the
2   defendant's response to the government's case in chief (*id*., at 2-3) must be
3   rejected.  The existence of an "enterprise" is a quintessential part of a RICO case;
4   the materiality of the requested information about the enterprise, in this case the
5   CLCS gang, is obvious;   this information will inform the defendant of the basis
6   for the prosecution's enterprise allegations.  Its disclosure is clearly necessary to
7   refute the government's argument that an enterprise existed and that the
8   defendants are members of that enterprise, elements that the government must
9   prove in its case in chief.
10        In addition, the indictment in this case charges a wide-ranging conspiracy
11  "[b]eginning on a date unknown to the Grand Jury and continuing until in [sic] or
12  about September 2008." (SSI, at 15, ¶ 2).   The Barajas homicide was on July 21,
13  2001 (*id*., at 21), and the last overt act in which the Iraheta brothers and Eduardo
14  Hernandez are alleged to have participated occurred on January 9, 2006 (*id*., at 23-
15  24).  The government has the burden of proving beyond a reasonable doubt that
16  Vladimir Iraheta, Leonidas Iraheta and Eduardo Hernandez *did not* withdraw from
17  the conspiracy before the considerable number of overt acts by other members of
18  the conspiracy alleged to have been committed after January 9, 2006.[2]   *See* Ninth
19  Circuit Model Jury Instruction 8.19  ("The government has the burden of proving
20  beyond a reasonable doubt that the defendant did not withdraw from the
21  conspiracy before the overt act – on which you all agreed – was committed by
22  some member of the conspiracy.").  To respond to  this element of the
23  prosecution's case in chief, the Irahetas and Eduardo Hernandez must show that
24  they withdrew from the conspiracy before or after January 2006.   Disclosure of
25  the Cal-Gangs database is required so that the defense can establish withdrawal

---

[2]     The post-January 9, 2005 overt acts are set forth in the Second Superseding Indictment at pages 24 - 50.

8

from the conspiracy; the absence of any documented contacts between these individuals and law enforcement after January 9, 2006 is evidence that directly bears on the prosecution's burden of proving lack of withdrawal. It is therefore discoverable.

The government's next argument, which is that the Cal-Gangs discovery would violate Rule 16(a)(2) must also be rejected. The government's conclusory assertion that the material requested constitutes "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" and/or impermissible early *Jencks* discovery (Doc. 754, at 4-3) is without factual support. Indeed, the Department of Justice Office of Justice Programs *Gang Prosecution Manual*, published in July 2009, contradicts the prosecution's description of its contents as "work product." It describes the function of a gang database as follows:

> The in-house [gang] database should allow the authorized user to enter and retrieve information on the gang's history, individual members, monikers, addresses, phone numbers, vehicle information, tattoos, marks or scars, and *specific incident or crime reports*. The in-house database is an invaluable tool that can provide instant access to *up-to-date information on gang membership*, expedite the investigation process, and lead to successful prosecution of gang cases.

(*Id.*, at p. 15; emphasis added).

## V.   The Materials Are Discoverable Under *Brady*

The prosecution's argument that the Cal-Gang database does not constitute exculpatory evidence (Doc. 754, at 5-7) is without merit. As explained above, the database – or, more precisely, the absence of material in the database – will show that Vladimir Iraheta, Leonidas Iraheta and Eduardo Hernandez withdrew from the conspiracy before the great majority of the overt acts alleged in the Second

9

1  Superseding Indictment.  The government's second argument against disclosure –
2  that the Cal-Gang database is "not in the possession or control of the government"
3  (*id*., at 6-7) – must be rejected on the authority cited in Section III, above.  The
4  prosecution has a duty to learn of any exculpatory evidence known to others acting
5  on the government's behalf.  "Because the prosecution is in a unique position to
6  obtain information known to other agents of the government, it may not be
7  excused from disclosing what it does not know but could have learned." *Carriger*
8  *v. Stewart,* 132 F. 3d at 480.

10  DATED:   April 21, 2010                              Respectfully submitted,

             MARCIA A. MORRISSEY
             CHARLES PEREYRA-SUAREZ

         By:  /s/ Marcia A. Morrissey
              Marcia A. Morrissey

             Attorneys for Defendant
             VLADIMIR IRAHETA

# **PROOF OF SERVICE**

STATE OF CALIFORNIA       )
                          ) ss.
COUNTY OF LOS ANGELES     )

I am employed in the County of Los Angeles, State of California and am over the age of 18 and not a party to the within action. My business address is 2115 Main Street, Santa Monica, California 90405.

On April 21, 2010, I served the foregoing document described as:

**VLADIMIR IRAHETA'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR DISCLOSURE OF GANG INFORMATION**

on the following parties in this action by United States mail:

> Kevin Lally, Esq.
> Assistant U.S. Attorney
> United States Attorney's Office
> 312 North Spring Street, 12th Fl.
> Los Angeles, CA 90012
>
> Nili T. Moghaddam, Esq.
> Assistant U.S. Attorney
> United States Attorney's Office
> 312 North Spring Street, 12th Fl.
> Los Angeles, CA 90012

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct, except as to those matters stated on information and/or belief, and as to those matters, I believe them to be true; and that this Declaration was executed at Santa Monica, California on April 21, 2010.

/s/ Cathy L. Mackerl
_____
CATHY L. MACKERL